## Kauffelt's Appeal.

A direction to the sheriff, by a plaintiff in an execution, "not to proceed further on his writ," "to put no more costs upon it," is a relinquishment and waiver of his right under it, such as will postpone him to a subsequent creditor where execution was levied upon the same personal property.

APPEAL by Henry Kauffelt from the decree of the court of common pleas of *Franklin* county, appropriating the proceeds of the sale of the personal property of Charles and William Flory, consisting of a warehouse built upon the lot of another person.

The execution of William and Samuel Seibert was issued on the 6th of December 1839, and that of Henry Kauffelt on the 3d of January 1840. The question was, whether Seibert's execution was not postponed by his direction to the sheriff, who testified as follows:

"After I received the writ of Seibert I levied on the warehouse. I considered it real estate, and left notice of an inquisition. I went on to hold it, and it was not condemned; afterwards I was informed it was personal property. Some time after that I saw Samuel Seibert; he told me not to put any more costs upon it—that he, as guardian of B. Gallon, was about to sell the lot to Mr Berlin, and he would get his money from Philip Berlin. I had asked Mr Seibert what was to be done. He said he had sold the lot to Mr Berlin, and he would get his money in that way, and it was no use to put any more costs on it. Some time after I had the *fieri facias* in favour of Kauffelt in my hands, and I asked Mr George Chambers what I should do—that Mr Berlin claimed the house. He asked me on what grounds he claimed it. I told him that the ground was that Flory had sold it to Jacob Berlin. Sometime before that, or it was so reported, Mr Chambers said he would see about the sale, whether it was a good sale or not. At the same time he said he would write to his client, Kauffelt, to see if he should go on or not, as Berlin claimed the house. Some six or eight days afterwards I called on Mr Chambers to know whether I should go on to advertise or not. He told me to go on to advertise, and if Mr Berlin had a better right to it than Flory, he would see about it. I think he said he had been speaking about it to Mr Berlin. I told him I had seen an article of agreement between Flory and Jacob Berlin, of Philadelphia, for the sale of the house. I went on to advertise the property for sale—I advertised on Kauffelt's writ. I endorsed the sale of the property on the back of both the writs—but I advertised on Kauffelt's writ. It was sometime after I had

[Kauffelt's Appeal.]

·received Kauffelt's execution that I had the conversation with Seibert; it was after I held the inquisition—we had different consultations about it. I could not tell whether it was two or three weeks after I got the execution in favour of Kauffelt. It must have been several weeks after—I cannot tell how long exactly. The first conversations with Seibert were after I had received Kauffelt's writ. The other conversations with Seibert were not about stopping the proceedings, but only to ask him whether he had made the deed and had his matters arranged. Mr Seibert did not explain to me how he would get his money from Philip Berlin; he said he had sold the lot to Philip Berlin. When I made the levy, Mr Flory's clerk, Mr Grier, was there. I suspect Grier was doing business for Flory. He said it would not condemn because part of it rented to some gentlemen in Columbia for 250 or 300 dollars till the 1st of April. · I understood Grier that he had rented it to those gentlemen in the absence of Flory, who was in Philadelphia. I never saw the article to show that this was personal property. The first advertisement I put up offered it as the property of Charles and William Flory. The sale was postponed for want of bidders. At the first day of sale I discovered that Charles had no interest in the property, and I offered only William's interest. I advertised on Kauffelt's writ, and the sale was continued by the direction of G. Chambers's *fieri facias* for want of bidders, and it was advertised again as the property of William Flory, and then sold to Samuel Seibert for 221 dollars. The second day of sale was fixed to accommodate Mr Seibert, who was about to go to the city, and who wished to be present at the sale. The first day of sale was on the 21st of April last. I do not think that any person occupied the property at the time of the sale; the doors were shut from the first of April till the day of sale. I do not think it was occupied by any person; I considered it as my property. There was no person living there; I considered it as property levied. There was no person occupying it doing business in it. I think that Mr Flory's clerk, Mr Grier, was back and forward there from the time I levied·till the first of April. I cannot tell whether he was doing business there or not—· I did·not go over to see."

The court below decreed the money to William and ·Samuel ·Seibert.

*Chambers, Jr.*, and *Denny*, for appellant, cited 3 *Rawle* 320; 5 *Watts* 303; 4 *Rawle* 380; 5 *Rawle* 286; 5 *Whart.* 150; 3 *Watts* 215, 235.

*Brady*, for appellee, cited 1 *Rawle* 367.

The opinion of the court was delivered by

SERGEANT, J.—This case does not seem to fall exactly within the class of cases, with which it has been compared, of a stay of

[Kauffelt's Appeal.]

proceedings on an execution. It is rather a case of express relinquishment of any further proceedings; a relinquishment and waiver of the right of the party under it. The plaintiff in the writ tells the sheriff, you need not do any thing further—put no more costs upon it—I expect to get my money by a different method. After this the sheriff could not take a step; nor is it certain that he would ever have been called on to proceed to a sale. Why, then, should not another execution creditor proceed? It is alleged that this order was given under a mistake of the plaintiff, or rather ignorance that the warehouse was personal estate and not real. But that was a matter he undertook to know, and was bound to know. No court of law or equity interferes to divest the legal right of one creditor because another has sustained a loss which is occasioned by his mistake or ignorance as to the proper mode of proceeding. Thus equity will not relieve against mispleading, or the inattention of parties in a court of law in neglecting a proper defence, or to move for a new trial in proper time, 1 *Mad. Ch.* 64; much less where others have gained a legal priority. We think that Seibert lost his right by his express renunciation and prohibition to the sheriff to proceed on the writ, and that the court below erred in awarding him the money as against Kauffelt.

Decree reversed and the money in question decreed to Kauffelt's judgment and execution.